**E-FILED**
Thursday, 05 November, 2015  10:33:25 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| RICHARD MESSERLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 12-3207 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

Plaintiff Richard Messerly filed this action to appeal a decision pursuant to Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401, 1381 et seq.   Pending are the Plaintiff's Motion for Summary Judgment and the Defendant's Motion for Summary Affirmance.

## I. INTRODUCTION

In July of 2009, Plaintiff Richard Messerly applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), alleging disability beginning on July 12, 2005.  The Plaintiff's applications were denied initially and on reconsideration.  The Plaintiff requested a hearing,

which was held before the administrative law judge (ALJ) on March 29, 2011.

On October 11, 2011, the ALJ denied the Plaintiff's applications, finding that Plaintiff was not disabled because he could perform a significant number of jobs in the economy.  The ALJ's final decision became the Commissioner's decision when the Appeals Council denied the Plaintiff's request for review.

Pursuant to §§ 405(g) and 1383(c) of the Social Security Act, the Plaintiff seeks judicial review of the final decision of the Commissioner.

## II. BACKGROUND

### A. Medical Evidence

In the years priors to his alleged onset date, doctors diagnosed the Plaintiff with depression, possible anxiety and other medical issues, such as chest tightness, dehydration and myalgias.  Moreover, the Plaintiff reported heat-related complaints and it was noted that he had a history of "heat stroke" and probably "heat intolerance."  He was later diagnosed with lower back pain  and possible right sciatica.  The Plaintiff also received treatment

for right thumb pain.

In January of 2005, David Volarich, D.O., evaluated the Plaintiff in connection with a worker's compensation claim.  Dr. Volarich found that Plaintiff should be restricted to a controlled environment of 60 to 75 degrees, among other things.

In June of 2006, the Plaintiff underwent a mental health assessment by William Anderson, MA, LCPC, who diagnosed adjustment disorder with mixed anxiety and depression on Axis I, and indicated a Global Assessment of Functioning ("GAF") of 61.[1]  The provider recommended individual counseling and therapy.

On March 7, 2007, the Plaintiff saw Wayne Stillings, M.D., a psychiatrist, for a consultative examination.  The Plaintiff complained of depression, characterized by a short temper, irritability, low moods, loss of interest and pleasure in life, insomnia, restlessness, anxiety, fatigue, feelings

---

[1]A GAF of 61 to 70 is defined as some mild symptoms (e.g., depressed mood or insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well and has some meaningful interpersonal relationships.  See Diagnostic and Statistical Manual of Mental Disorders (4th ed., Text Revision 2000) (DSM-IV-TR), 34.

of worthlessness and hopelessness, and loss of concentration.

The Minnesota Multiphasic Personality Inventory – 2 (MMPI-2) was administered.  Dr. Stillings deemed the results valid.  He stated the Plaintiff is quite anxious and depressed, has a high level of anger and is likely to be suffering from chronic pain.  Moreover, he is likely to worry about the future and has a potential for explosive behavior at times.  Dr. Stillings did not believe the Plaintiff was "overreporting his subjective complaints."  Dr. Stillings diagnosed parent-child relational problem, as well as chronic dysthmic disorder on Axis I, dependent personality features on Axis II, and indicated a GAF of 52.[2]  Dr. Stillings found it to be unclear whether the Plaintiff could maintain a job due to his depressive disorder.

In interpreting the MMPI-2 test, James N. Butcher, Ph.D., believed there was a strong possibility that Plaintiff's physical problems were feigned and manipulated.  He found there was a likelihood some of the reported problems were feigned and manipulative and the Plaintiff's medical problems were presented to avoid difficult life circumstances or to gain

---

[2]A GAF of 51-60 is defined as moderate symptoms or moderate difficulty in social, occupational or school functioning.  DSM-IV-TR, 34.

compensation.   Consequently, the possibility of a malingering profile should be evaluated carefully.   It was further noted that Plaintiff's low morale and lack of interest in work could impair future adjustment to employment.

On May 1, 2007, Dr. Volarich reevaluated the Plaintiff.  He noted that Plaintiff had tried to work since 2005, but was unable to due to heat intolerance and severe fatigue.  The Plaintiff told Dr. Volarich that during the day, he searched online for jobs, went on interviews and attended vocational rehabilitation.  Moreover, the Plaintiff tried to stay active by doing household chores and yard work.  However, the Plaintiff fatigued quickly and had to sit and rest.  The Plaintiff reported that he did not have the financial means to obtain treatment for his hypercholesterolemia or depression.  Dr. Volarich diagnosed heat exhaustion with heat intolerance, with no clinical evidence of end organ failure, in addition to chronic fatigue syndrome and anxiety/depression.   He recommended that Plaintiff be retrained to work in a controlled environment and referred to his January 2005 report.

On April 11, 2008, the Plaintiff sought treatment for chest pain.  He was evaluated, administered Toradol and diagnosed with non-cardiac chest pain.

On September 24, 2009, the Plaintiff underwent a psychological evaluation by Stephen Vincent, Ph.D., at the request of the state agency. He reported inability to work due to fatigue and depression.  The Plaintiff complained of apathy and social isolation.  The Plaintiff stated he was not taking any psychopharmacological medication and had not recently been seen by a psychologist or psychiatrist, as the Plaintiff said he could not afford such treatment.  Dr.  Vincent noted normal orientation, thought processes and social behavior.  The Plaintiff had slow speech, a moderately depressed mood and questionable memory.  Dr. Vincent noted a history of ongoing depression for eight years, though the Plaintiff has not been taking medication due to financial difficulties.  The Plaintiff was found to not be psychotic nor suicidal and was determined to be cognitively intact.  Dr. Vincent diagnosed major depression on Axis I.

Also on September 24, 2009, Raymond Leung, M.D., evaluated the

6

Plaintiff at the request of the state agency.  The Plaintiff reported that he vomited when he exerted or became overheated.  Dr. Leung's impression was that Plaintiff had a history of heat stroke over seven years ago.

On October 20, 2009, Glen Pittman, M.D., a psychiatrist and state agency medical expert, observed that Plaintiff's functioning was satisfactory even though he was not social.  Dr. Pittman further opined that although the Plaintiff had a depressed mood, he had no severe mental limitations.

Several weeks after the hearing before the ALJ, on May 12, 2011, the Plaintiff was again evaluated by Dr. Vincent.  The Plaintiff reported an inability to sustain employment due to a history of heat stroke, in addition to a history of depression, irritable mood, apathy, generalized negativity as to himself and others, ease of confusion, lack of concentration, fatigue, withdrawal and isolation, and other problems.  The test results revealed a monotone voice, lack of confidence, slow thought processes, and distant manner, among other things.  Test results from the MMPI-2 were consistent with individuals experiencing emotional disturbances associated with depression with ambivalence towards self and the world, in addition

to problems with irritability and agitation, among other things.  Dr. Vincent observed that Plaintiff was currently functioning within a range indicative of mood disturbances associated with depression, with mild cognitive changes status post-heat stroke.  This indicated improvement and continuity of thought was relatively intact throughout the examination. Dr. Vincent observed that Plaintiff was not currently involved in any formal psychological and/or psychiatric treatment and was not taking any psychopharmacological agent.  He diagnosed major depression, generalized anxiety disorder, history of mild cognitive changes status post-heat stroke, in partial to full remission.

Also on May 12, 2011, Dr. Vincent completed a Medical Source Statement of Ability to do Work-Related Activities (Mental).  The test revealed the Plaintiff had mild limitations in the ability to understand and remember simple instructions and carry out simple instructions.  The Plaintiff had moderate limitations in the ability to make judgments on simple work-related decisions, understand and remember complex instructions, carry our complex instructions and the ability to make

8

judgments on complex work-related decisions.  Dr. Vincent further found the Plaintiff had moderate limitations regarding his ability to interact with others and respond appropriately to work situations and changes.   He opined that Plaintiff's depression, anxiety and apprehension around others would moderately compromise his ability to appropriately interact with others and adapt to changes in the workplace.

### B. Hearing testimony

On March 29, 2011, the Plaintiff appeared at the hearing and testified before the ALJ.  The Plaintiff stated he could not work because of a combination of physical and mental health problems.  He testified that he had heat stroke and his body could no longer regulate temperature. However, he continued to work for two years thereafter.  The Plaintiff had worked primarily in construction.  When he got hot, the Plaintiff would get sick, dizzy, light-headed and would cramp up.  The Plaintiff testified he would be able to work within a temperature range of 60 to 75 degrees, though he had not found any such work.  He stated he thought he could perform his past work as a construction superintendent.

The Plaintiff testified that because of his mental health problems, he had become a "natural born crier." He stated he was unable to see any mental health professional regularly because "I need to eat." The Plaintiff testified that office visits with his family physician were too expensive and antidepressants that were prescribed caused unwanted side effects. He acknowledged he would benefit from treatment but could not afford it. The Plaintiff agreed with Dr. Stillings's description of being depressed, short-tempered and irritable with low moods, loss of interest, insomnia, restlessness, anxiety, fatigue, feelings of worthlessness and hopelessness and poor concentration. He further agreed that he had poor concentration, difficulty getting along with people and trouble staying on task. The Plaintiff stated he had insomnia and only slept three hours a night. He became tearful reading Dr. Stillings's description.

The Plaintiff testified that after his alleged onset date, he worked in June of 2006 as an installer and earned $1,800. He also reported working during the second quarter of 2010. The Plaintiff worked for Challenge Unlimited for approximately four months. This position involved working

10

as a house parent at a home with eight men that were physically/mentally challenged.  The job involved checking on them at night and cooking, cleaning and distributing medication.  The Plaintiff testified his position was terminated without any explanation.

The Plaintiff obtained his GED in 2006, as part of a job placement program.  He was required to take about six weeks of classes prior to the test.  The Plaintiff also testified he must do a substantial amount of work at home because his wife is disabled.

Vocational expert ("VE") J. Stephen Dolan testified that if the Plaintiff were limited to light work with certain climbing and postural limitations and limited to simple, routine work in a low stress environment with only occasional decision-making or occasional changes in work setting, then the Plaintiff could not perform his past relevant work though he could perform other jobs in the economy.

C. ALJ's Decision

On October 11, 2011, the ALJ issued an unfavorable ruling finding that the Plaintiff was not disabled and denying the benefits sought in his

11

applications.  The ALJ found that Plaintiff had not engaged in substantial gainful activity since July 12, 2005, the alleged onset date.

The ALJ further found that Plaintiff has severe impairments of status-post heat stroke, anxiety and depression.  However, the ALJ found that Plaintiff did not suffer from an impairment or combination of impairments of a severity that meets or medically equals the required severity of a listing.

The ALJ described the Plaintiff's residual functional capacity ("RFC") as follows:

> [T]he claimant can lift and carry up to 20 pounds occasionally and up to 10 pounds frequently, that he can sit for up to 6 hours in an 8-hour workday, and that he can stand and/or walk for a combined 6 hours.  However, he must work in a climate-controlled environment with temperatures between 60 and 75 degrees Fahrenheit, he can never climb ladders, ropes, or scaffolds, and he can only occasionally balance, bend, crawl, crouch, kneel, stoop, and climb ramps and stairs.  Finally, he is limited to simple and routine tasks in a low-stress environment that involved no decision-making or changes in the work setting, and that require only occasional interaction with supervisors, co-workers, or the public.

Tr. 16.  The ALJ found that Plaintiff was unable to perform any past relevant work.

In his Decision, the ALJ included the following language which the

12

Seventh Circuit has often criticized as "meaningless boilerplate":

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment.

The ALJ further found that Plaintiff "has a fair work history, which neither strengthens or diminishes the credibility of his assertion of disability." The ALJ did state that Plaintiff's psychological testing showed a "lack of work motivation." Moreover, the Plaintiff's attempts to return to work on two occasions since his alleged onset date suggested that Plaintiff believes he is able to work and served to diminish his allegations of disability.

The ALJ also found the Plaintiff's allegations regarding mental impairments to be "quite limited" and did not support a disability finding. He observed that medical records from 2005 supported a diagnosis of "untreated depression."

The ALJ further found that following a June of 2006 mental health assessment, the Plaintiff did not seek mental health treatment. He gave Dr.

Vincent's opinions "great weight," finding that they were "supported by the objective evidence of record" and were consistent with the RFC.

The ALJ observed that Plaintiff has moderate difficulties as to social functioning.  However, the Plaintiff was never hospitalized for a mental impairment and has never pursued anger management or counseling.

As for physical ailments, the ALJ observed that Plaintiff had "failed with any regularity" to seek treatment for heat-related symptoms or any other ailment since his onset date.

Upon considering the relevant factors, the ALJ found that other jobs existed in significant numbers in the national economy that Plaintiff could perform.  Accordingly, the ALJ found that Plaintiff was not disabled and denied the benefits sought in his applications.

## III. DISCUSSION

A. Standard of review

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Pursuant to section 205(g) of the Social Security Act, the ALJ's

decision must be upheld if it is supported by substantial evidence.   See Moore v. Colvin, 743 F.3d 1118, 1120 (7th Cir. 2014).   "Substantial evidence" includes "such relevant evidence as a reasonable mind accepts as adequate to support a conclusion."   Id. (citations omitted).   The ALJ's decision must include a "logical bridge from the evidence to the conclusions sufficient to allow . . . a reviewing court[] to assess the validity of the agency's ultimate findings and afford [the Plaintiff] meaningful judicial review."   Id.   This Court may not substitute its judgment for that of the ALJ "by reconsidering facts, reweighing evidence, resolving conflicts in evidence or deciding questions of credibility."   Williams v. Apfel, 179 F.3d 1066, 1071-72 (7th Cir. 1999) (citation omitted).

### B. ALJ's consideration of Plaintiff's RFC as to mental impairments

The Plaintiff contends that the ALJ erred in determining his RFC regarding mental impairments by failing to include additional limitations including those arising from anger, irritability and conflict with others, by failing to consider his financial circumstances as a barrier to pursuing treatment and by improperly weighing the medical opinion evidence.

The applicable regulations set forth the factors applied when weighing medical evidence.  See 20 C.F.R. § 404.1527(d).  Upon reviewing the record evidence, the Commissioner determines whether an individual is disabled.  Therefore, the opinion of a medical source on the ultimate issue that an individual is "disabled" or "unable to work" is not controlling.  See 20 C.F.R. § 404.1527(d)(1).

The opinion of an examining source is generally given more weight than is a non-examining source.  See 20 C.F.R. § 404.1527(c)(1).  If a "treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence" in the record, it is given controlling weight.  20 C.F.R. § 404.1527(c)(2).  If the treating source's opinion is not given controlling weight, the following factors are considered in determining the amount of weight to give to the opinion: the length, nature and extent of the treatment relationship and frequency of examination, the supportability of the opinion by test results, the consistency of the opinion, the

specialization of the physician and any other relevant factors.   See 20

C.F.R. § 404.1527(c)(2)(i)(ii), (3)-(6)

>   The ALJ determined the Plaintiff's RFC as follows:
>
>   Messerly can lift and carry up to 20 pounds occasionally and up
>   to 10 pounds frequently, that he can sit for up to 6 hours in an
>   8-hour workday, and that he can stand and/or walk for a
>   combined 6 hours.  However, he must work in a climate-
>   controlled environment with temperatures between 60 and 75
>   degrees Fahrenheit, he can never claim ladders, ropes, or
>   scaffolds, and he can only occasionally balance, bend, crawl,
>   crouch, kneel, stoop, and climb ramps and stairs.  Finally, he is
>   limited to simple and routine tasks in a low-stress environment
>   that involve no decision-making or changes in the work setting,
>   and that require only occasional interaction with supervisors,
>   co-workers, or the public.

Tr. at 16.   The Plaintiff alleges that the ALJ should have included

additional limitations regarding his irritability and conflict with others, and

regarding his inability to stay on task due to low concentration, poor sleep

or crying spells.

The record shows that the ALJ considered the Plaintiff's allegations

that he had difficulty getting along with others and noted that examination

findings indicated some irritability and difficulty controlling anger.  The

ALJ observed that the Plaintiff had moderate difficulties with respect to

17

social functioning.  However, the Plaintiff had never been hospitalized for any mental impairment and had not pursued anger management or counseling.  Based on the information in the record, the ALJ limited the Plaintiff to no more than occasional interaction with supervisors, co-workers and the public.  Additionally, the ALJ limited the Plaintiff to simple and routine tasks in a low-stress work environment that involved no decision-making.

The Plaintiff cites a number of his subjective complaints and statements from Dr. Stillings's report regarding his mental health issues. He agreed with Dr. Stillings's description of being depressed and short-tempered and irritable with low moods.  The Plaintiff exhibited symptoms of loss of interest, insomnia, restlessness, anxiety, fatigue, feelings of worthlessness and poor concentration.

The Court concludes that, although the Plaintiff exhibited a number of symptoms, he has not demonstrated that any further limitations than those determined by the ALJ are warranted.  The Plaintiff points to a number of symptoms relating to mental impairments that were present in

2001, including that Plaintiff would get aggravated at times and had crying spells for a month.  Despite these limitations, the Plaintiff was able to work at that time.

The record shows that the ALJ considered the Plaintiff's allegations of his difficulty remembering, poor concentration and crying spells.  Based on the medical evidence as well as the Plaintiff's history and his statements, the ALJ reasonably found that Plaintiff could perform simple and routine tasks in a low-stress environment with no decision-making or changes in work setting.

The Plaintiff is also critical of the fact that the ALJ did not give significant weight to the opinion of Dr. Stillings, a psychiatrist.  However, the Social Security regulations provide that both psychiatrists and psychologists are acceptable medical sources.   See 20 C.F.R. § 404.1513(a)(1), (2).

The ALJ noted that Dr. Stillings diagnosed the Plaintiff with dysthymic disorder and observed that there were a number of symptoms that would impact his ability to perform a job and, in fact, it was not clear

whether he would be able to maintain a job, especially due to his lack of treatment.

To the extent that Dr. Stillings found that Plaintiff could not maintain employment due to his depression, the ALJ was not required to give weight to that opinion. Because the ultimate issue is reserved for the Commissioner, a medical source's opinion that the claimant is "disabled" or "unable to work" is not dispositive. See 20 C.F.R. § 404.1527(d)(1), (2).

The ALJ found it significant that Dr. Vincent had examined the Plaintiff on two occasions–first in September of 2009 and again in May of 2011, soon after the hearing. The ALJ noted that his examinations were consistent with each other and with the objective evidence and the record as a whole. Accordingly, it was reasonable for the ALJ to give Dr. Vincent's opinion regarding limitations significant weight.

In order to get benefits, an individual generally must follow prescribed treatment if it can restore his ability to work. See 20 C.F.R. § 404.1530. There are certain exceptions. A justifiable cause for such failure is that the "individual is unable to afford prescribed treatment which he or she is

willing to accept, but for which free community resources are unavailable."

SSR 82-59.  The social security ruling provides:

> Although a free or subsidized source of treatment is often available, the claim may be allowed where such treatment is not reasonably available in the local community.  All possible resources (e.g., clinics, charitable and public assistance agencies, etc.), must be explored.  Contacts with such resources  and the claimant's financial circumstances must be documented.  Where treatment is not available, the case will be referred to VR.

SSR 82-59(4).  The Plaintiff contends that the ALJ improperly considered his alleged failure to obtain proper mental health treatment by citing the Plaintiff's "untreated depression" and his failure to seek any mental health after a June of 2006 mental health assessment.  Additionally, the ALJ noted that Messerly had never been hospitalized for mental impairments and never pursued anger management or counseling.

The Court concludes that, to the extent the ALJ suggested or implied that any mental impairments of the Plaintiff were due to his failure to obtain treatment, any error is harmless.  In considering the Plaintiff's mental limitations, the ALJ relied primarily on the opinion from Dr. Vincent.  Dr. Vincent found that Plaintiff had mental limitations despite

his lack of treatment.  These limitations were incorporated in the Plaintiff's RFC finding.   Thus, the ALJ's failure to discuss the reasons for the Plaintiff's lack of mental health treatment was harmless.

Based on the foregoing, the Court concludes that substantial evidence supported the ALJ's RFC finding.

### C. ALJ's finding as to the Plaintiff's credibility

The Plaintiff alleges the ALJ erred in making summary and insufficient findings regarding Messerly's credibility and by reaching conclusions that were inconsistent or illogical and not supported by the record.

"When evaluating credibility, the ALJ must consider the entire case record and give specific reasons for the weight given to the individual's statements."  Shideler v. Astrue, 688 F.3d 306, 311 (7th Cir. 2012).  "An ALJ may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence."  Similia v. Astrue, 573 F.3d 503, 517 (7th Cir. 2009) (internal quotation marks and citations omitted).  A number of factors should be considered, including the

objective medical evidence, the individual's daily activities, allegations of pain, aggravating factors, types of treatment and medication, and "functional limitations."  See id. (citations omitted).  If upon considering the record the ALJ finds the claimant incredible, then he or she may disregard the testimony.  See id.

In contending that the ALJ did not properly consider his credibility, the Plaintiff points to the following boilerplate language in the ALJ's decision:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

See Tr. 17.  The Plaintiff alleges that this boilerplate statement suggests that the ALJ did not consider the entire record, in that it does not specify how much weight was given to the testimony.  The United States Court of Appeals for the Seventh Circuit has described similar language  that frequently appears in ALJ's opinions as "meaningless boilerplate."  See

Parker v. Astrue, 597 F.3d 920, 922 (7th Cir. 2010).  The Seventh Circuit

has also stated:

> [T]he ALJ's determination or decision regarding claimant
> credibility must contain specific reasons for the finding on
> credibility, supported by the evidence in the case record, and
> must be sufficiently specific to make clear to the individual and
> to any subsequent reviewers the weight the adjudicator gave to
> the individual's statements and the reasons for that weight. . .
> .  [I]t is not sufficient for the adjudicator to make a single
> conclusory statement that the individual's allegations have been
> considered or that the allegations are (or are not) credible.  It is
> also not enough for the adjudicator simply to recite the factors
> that are described in the regulations for evaluating symptoms.

Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001) (internal quotation

marks and citations omitted).

Based on the ALJ's rejection in boilerplate fashion of the Plaintiff's

statements as inconsistent with the RFC determination, the Plaintiff

contends that the RFC assessment should not be upheld by the Court.  The

Plaintiff alleges his testimony is actually consistent with the treatment

records.  The ALJ did not point to any evidence in the record which

contradicts the Plaintiff's statements and testimony that he has to nap one

hour per day, and that he has crying spells, or that he becomes angry and

24

irritable.  Additionally, although the ALJ stated that Plaintiff did not seek proper treatment, he did not consider evidence of financial hardship or whether treatment would have been beneficial.

In asserting that the ALJ properly considered the Plaintiff's credibility with respect to his claims of pain, the Commissioner notes that the often-criticized boilerplate language alone is not enough to support a finding of disability.  The use of such language is harmless if the ALJ provides additional reasons for his finding.  See Filus v. Astrue, 694 F.3d 863, 868 (7th Cir. 2012); Shideler v. Astrue, 688 F.3d 306, 311-12 (7th Cir. 2011).  Thus, a remand is not necessary if the ALJ's credibility assessment is otherwise supported.

The ALJ noted that Plaintiff returned to work on two separate occasions after his alleged onset date.  In 2006, the Plaintiff earned $1,800 working as an installer.  Additionally, in 2010, he worked 40 hours per week for three to four months as a house parent at a home for men who were physically or mentally challenged.  The ALJ also observed that Plaintiff had spent time in vocational rehabilitation and had applied for jobs.  Based

on this evidence, the ALJ found that Plaintiff believes he is able to work, thereby undermining his allegations of disability.

The ALJ also found that psychological testing had shown a lack of work motivation. This factor, along with the aforementioned evidence that Plaintiff could work, suggested that he did not want to work and served to diminish his credibility regarding his disability.

Although the Plaintiff complains that the ALJ did not consider the evidence which supported his position, the record does not support the Plaintiff's assertion. The ALJ gave significant weight to Dr. Vincent's report, which opined that Plaintiff suffered from depression. The ALJ also considered the opinion of Dr. Volarich and that no doctor had any additional physical limitations, except for working in a climate-controlled environment.

Although the ALJ should have considered the Plaintiff's ability to afford treatment before finding that his failure to seek treatment undermined his credibility, see 20 C.F.R. § 404.1530, the error was harmless given that the ALJ considered a number of other factors in

evaluating the Plaintiff's claim.  See Similia, 573 F.3d at 516.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ's findings are supported by substantial evidence.  Pursuant to § 205(g) of the Social Security Act, therefore, the ALJ's decision will be upheld.

<u>Ergo</u>, the Plaintiff's Motion for Summary Judgment [d/e 9] is DENIED.

Pursuant to Rule 25 of the Federal Rules of Civil Procedure, Carolyn W. Colvin, as Acting Commissioner of Social Security, is hereby automatically substituted as the Defendant in this suit.

The Defendant's Motion for Summary Affirmance [d/e 12] is ALLOWED.

The Commissioner's decision is Affirmed.

The Clerk will enter Judgment and terminate this case.

ENTER: November 5, 2015

FOR THE COURT:

s/Richard Mills
Richard Mills
United States District Judge

27